## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

BARBARA MERRITT and
GREGORY WAYNE MERRITT,
      Plaintiffs,

vs.                                CASE NO.:  5:14-CV-00423-ACC-PRL

BAYVIEW LOAN SERVICING, LLC,
a foreign limited liability company,

      Defendant.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs, BARBARA MERRITT and GREGORY WAYNE MERRITT, by and through undersigned counsel, sue the Defendant, BAYVIEW LOAN SERVICING, LLC, and in support thereof respectfully alleges the following:

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 as this case presents a federal question, and pursuant to 15 U.S.C. § 1692k(d) and/or pursuant to 28 U.S.C. § 1367 for pendant state law claims.

2.     Plaintiffs bring this action to recover statutorily prescribed damages for acts on the part of Defendant BAYVIEW LOAN SERVICING, LLC (hereafter "BAYVIEW"), in violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* (hereafter "TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (hereafter "FDCPA"), the Florida Consumer Collection Practices Act, sections 559.55, *et seq.*, Florida Statutes (hereafter "FCCPA"), and for common law Intentional Infliction of Emotional Distress.

3.      The alleged violations described in the Complaint occurred in Marion County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTS COMMON TO ALL COUNTS

4.      Plaintiffs, BARBARA MERRITT and GREGORY WAYNE MERRITT (hereafter "MERRITT"), are natural persons over the age of eighteen (18), who reside in Fort McCoy, Marion County, Florida.

5.      Plaintiffs are a debtor and/or alleged debtor as that term is defined by section 559.55(2), Florida Statutes.

6.      Plaintiffs are a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

7.      Plaintiffs are the "called party" with respect to the calls described herein. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012).

8.      At all times material hereto, Defendant was and is a foreign limited liability company, transacting business in the State of Florida, with its principal office in Coral Gables, Florida.

9.      At all times material hereto, Defendant did transact business in Marion County, Florida, as a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and/or section 559.55(6), Florida Statutes. Defendant sought to collect an alleged debt from Plaintiffs that arose from a transaction incurred for personal, family or household purposes and is therefore a "consumer debt."

10.     As described herein, Defendant employed business practices resulting in intentional harassment and abuse of the Plaintiffs and engaged in patterns of outrageous, abusive

and harassing conduct by and through its agents and representatives in an effort to collect an alleged debt from Plaintiffs that Plaintiffs do not owe.

11.     Defendant intentionally harassed and abused Plaintiffs on numerous occasions by sending Plaintiffs threatening collection letters asserting false and misleading information, and by calling Plaintiffs' cellular telephone number and work phone number several times per day, and on back to back days, with such frequency as can reasonably be expected to harass, in an effort to collect an alleged debt that the Plaintiffs do not owe.

12.     On or about September 19, 2008, Plaintiffs executed and delivered a promissory note to CITIFINANCIAL EQUITY SERVICES, INC. (hereafter "CITIFINANCIAL EQUITY") in exchange for and evidencing a loan by CITIFINANCIAL EQUITY to Plaintiffs in the amount of $134,629.83 (hereafter the "Subject Mortgage Loan"), and executed a mortgage on the same date securing payment of the Subject Mortgage Loan to CITI INANCIAL EQUITY (hereafter the "Subject Mortgage"), which was recorded in the Marion County Official Records at Book 05103, Pages 1831-1836 on or about October 02, 2008.

13.     The Subject Mortgage secured payment of the Subject Mortgage Loan by certain real property then owned by Plaintiffs, with a street address of 23202 NE 103rd Avenue, Ft. McCoy, Florida, 32134 (hereafter the "Subject Property").

14.     On or about December 16, 2013, CITIFINANCIAL EQUITY assigned the Subject Mortgage to CITIFINANCIAL SERVICING, LLC by executing an Assignment of Mortgage, which was subsequently recorded in the Marion County Official Records at Book 5974, Page 1870, on or about December 23, 2013.

15.     On or about February 18, 2014, CITIFINANCIAL SERVICING, LLC, assigned the Subject Mortgage Loan to Defendant by executing an Assignment of Mortgage, which was

subsequently recorded in the Marion County Official Records at Book 5998, Page 740, on or about February 19, 2014.

16.     On or about October 27, 2010, Plaintiffs filed a Voluntary Petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Florida, in a case styled: *In re: Gregory Wayne Merritt and Barbara Haley Merritt, Case No. 3:10-bk-09395-JAF, United States Bankruptcy Court, Middle District of Florida* (hereafter the "Subject Bankruptcy Action"), wherein Plaintiffs sought to discharge certain debts, including but not limited to the Subject Mortgage Loan.

17.     In Section D of the Voluntary Petition at page 16, Plaintiffs identified the Subject Mortgage Loan and Mortgage on the bankruptcy schedules and identified CITIFINANCIAL EQUITY as a secured creditor with respect to same. Furthermore, as may be seen in the Statement of Intention of the Voluntary Petition at page 41, Plaintiffs intended to surrender the Subject Property in connection with the discharge of the debt.

18.     On or about October 28, 2010, the court in the Subject Bankruptcy Action entered a Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines, in which the court scheduled the Meeting of Creditors, and set a February 11, 2011 deadline for creditors to file a complaint objecting the discharge of the debtors or to determine dischargeability of certain debts, and said Notice of Commencement was furnished to CITIFINANCIAL EQUITY, among others. A copy of the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines and Certificate of Notice is attached hereto as Exhibit "A."

19.     CITIFINANCIAL EQUITY did not file a complaint objecting the discharge of Plaintiffs or to determine the dischargeability of the Subject Mortgage Loan prior to the February 11, 2011 deadline set forth by the United States Bankruptcy Court in the above described Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines.

4

20.     Consequently, on or about February 14, 2011, the United States Bankruptcy Court in the Subject Bankruptcy Action entered an Order granting Plaintiffs a discharge pursuant to 11 U.S.C. § 727, and thereby discharging the Plaintiffs with respect to the Subject Mortgage Loan (hereafter the "Subject Discharge Order"). A copy of the Subject Discharge Order is attached hereto as Exhibit "B."

21.     The Subject Discharge Order states, in relevant part:

> The discharge prohibits any attempt to collect from the debtors a debt that has been discharged . . . <u>a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit,</u> to attach wages or other property, <u>or to take any other action to collect a discharged debt from the debtors.</u> A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.

22.     Additionally, pursuant to 11 U.S.C. § 524, a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."

23.     On or about February 14, 2011, the United States Bankruptcy Court in the Subject Bankruptcy Action forwarded the Subject Discharge Order to CITIFINANCIAL EQUITY, and on February 16, 2014, the Court mailed the Subject Discharge Order to CITIFINANCIAL EQUITY's counsel of record in the Subject Bankruptcy Action, Daniel C. Consuegra, P.A., 9204 King Palm Drive, Tampa, FL 33619-1328, thereby informing CITIFINANCIAL EQUITY of the Plaintiffs' discharge with respect to the Subject Mortgage Loan. *See* Exhibit "C" at page 3.

24.     On or about July 11, 2011, the United States Bankruptcy Court in the Subject Bankruptcy Action closed the Plaintiffs' Chapter 7 case.

25.     Accordingly, as of the date of the above described Certificate of Mailing to Defendant's predecessor in interest, CITIFINANCIAL EQUITY, on or about February 16, 2011,

Defendant and its predecessor in interest possessed actual knowledge that the Subject Mortgage Loan had been discharged through Chapter 7 bankruptcy, as well as the specific date of said discharge.

26.     Inexplicably, in or about September of 2013 -- more than two (2) years after the Subject Mortgage Loan was discharged by the United States Bankruptcy Court, Defendant BAYVIEW, as purported servicer or the discharge Subject Mortgage Loan, began contacting the Plaintiff by mail and by telephone in an effort to collect the discharged debt from Plaintiffs.

27.     Beginning in or about September of 2013, Defendant sent a letter to Plaintiffs entitled "Account Statement," referencing "Account Number 961048" in connection with the Subject Mortgage Loan, wherein Defendant sought to collect payments from Plaintiffs in connection with the Subject Mortgage Loan. As an example, a copy of the April 23, 2014 "Account Statement" collection letter is attached hereto as Exhibit "D."

28.     As may be seen, the April 23, 2014 "Account Statement" collection letter alleges the existence of a "Outstanding Principal Balance" in the amount of $134,629.83, as well as numerous unexplained and mysterious fees, late charges, and payments alleged to be owed by Plaintiff to Defendant, and requesting payment from Plaintiffs, as follows, in part:

Property Preservation Disbursement … ………………….. $11.00
Property Preservation Disbursement ……………………….$11.00
Property Preservation Disbursement ……………………….$100.00
Property Preservation Disbursement ……………………….$14.00
HOMEOWNERS INSURNACE PREMIUM……………..$624.49
Property Preservation Disbursement ……………………..$900.00
Property Preservation Disbursement ……………….......$60.00
Property Preservation Disbursement …………………….. $150.00

29.     At the time BAYVIEW mailed the first "Account Statement" collection letter to Plaintiffs, BAYVIEW possessed actual knowledge that the Subject Mortgage Loan had been discharged over two (2) years prior to the date of said letter through Chapter 7 bankruptcy in

February of 2011, as described above. Thus, BAYVIEW was well aware of the falsity of the information set forth in said collection letter, including the invalidity of the fees and payments alleged to be due to Defendant by Plaintiffs, and the falsity of the alleged status of the Subject Mortgage Loan as being in foreclosure.

30.     Defendant continued to send substantially similar "Account Statement" collection letters to Plaintiffs on a monthly basis, including but not limited to the below referenced letters, and such collection letters are continuing to be sent by Defendant and received by Plaintiffs through the date of filing of this Complaint:

| Statement Date | Past Due/Due Immediately | Total Amount Due |
|---|---|---|
| January 23, 2014: | $74,672.82 | $76,055.65 |
| February 24, 2014 | $76,055.65 | $77,438.48 |
| March 24, 2014: | $77,438.48 | $78,821.31 |
| April 23, 2014 : | $78,821.31 | $81,036.79 |
| May 23, 2014: | $81,036.79 | $83,252.27 |
| June 23, 2014: | $83,252.27 | $85,467.75 |

Copies of the above referenced letters are attached hereto as Composite Exhibit "E."

31.     Additionally, Defendant sent numerous letters to Plaintiffs, up to four (4) times per month, regarding a variety of mortgage payment and home owner related issues, including but not limited to the below referenced letters, and such letters are continuing to be sent by Defendant and received by Plaintiffs through the date of filing of this Complaint:

| Correspondence Date | Correspondence Content |
|---|---|
| December 31, 2013: | Information on the Home Affordable Modification Program |
| February 18, 2014: | Notice to Home Loan Applicant re: Your Credit Score |
| March 3, 2014: | Notification of Availability of Homeownership Counseling |
| March 4, 2014: | Notice of Placement of Lender-Placed Insurance |
| April 7, 2014: | Options for Avoiding Foreclosure and Keeping your Home |
| April 7, 2014: | Denial of a Home Affordable Foreclosure Alternative Loan Mod |
| April 7, 2014: | Pre-approval for Liquidation Options |
| May 21, 2014: | Notice of Delinquent Taxes on Property Securing Loan |

Copies of the above referenced letters are attached hereto as Composite Exhibit "F."

32.     In addition to sending the above described collection letters, Defendant initiated numerous telephone calls to Plaintiffs' cellular telephone number, (352) 229-6172, in an effort to collect the discharged debt at issue from Plaintiffs.

33.     To date, Plaintiffs have received approximately one-hundred fifty (150) calls to their aforementioned cellular telephone number from Defendant in an effort to collect the discharged debt at issue, and the calls continue through the date of filing of this Complaint  (or such time as will be established after a thorough review of Defendant's records).

34.     Upon answering the above described collection calls from Defendant, Plaintiffs repeatedly informed Defendant's representatives that the Subject Mortgage Loan was discharged through Chapter 7 bankruptcy in February of 2011. Plaintiffs have engaged in numerous conversations with Defendant's collection representatives upon answering said collection calls; however, despite having been repeatedly told by Plaintiffs that the debt at issue was previously discharged through Chapter 7 bankruptcy, Defendant remains steadfast and undeterred in its campaign of placing abusive and harassing collection calls to Plaintiffs' aforementioned cellular telephone number.

35.     Additionally, Plaintiffs made several calls to Defendant in an effort to bring a stop to the Defendant's unlawful collection conduct in connection with the discharged debt, wherein Plaintiffs likewise repeatedly informed Defendant's representatives that the Subject Mortgage Loan was discharged through Chapter 7 bankruptcy in February of 2011, and requested that Defendant discontinue its abusive and harassing campaign of placing collection calls to her aforementioned cellular telephone number and sending threatening collection letters.

36.     Furthermore, on or about February 28, 2014, Plaintiffs sent Defendant a Cease and Desist letter via USPS Certified Mail No: 7012 2210 0000 0973 0291, demanding an end to

all communication with Plaintiffs by mail, phone or email for any reason, notifying Defendant that Plaintiffs were represented by counsel, and providing the name and contact information of Plaintiffs' attorney. A copy of the above referenced letter and confirmation of Defendant's receipt of the same is attached hereto as Composite Exhibit "G."

37.     Despite Defendant's actual knowledge that the Subject Mortgage Loan was discharged through Chapter 7 bankruptcy in February of 2011, Defendant's representatives being repeatedly informed of the same by Plaintiffs, and Defendant's receipt of Plaintiff's February 28, 2014 Certified Mail correspondence demanding a cease to all communications to Plaintiffs, and notifying Defendant that Plaintiffs were represented by counsel, Defendant refused to discontinue its campaign of abusive, harassing, and unlawful collection conduct, including the mailing of false and misleading collection letters, and the placement of collection calls to Plaintiffs' aforementioned cellular telephone number, in violation of the TCPA, FDCPA, FCCPA and Florida common law, as set forth herein.

38.     The telephone calls at issue were placed by Defendant using an "automated telephone dialing system" or "autodialer," which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers, as defined by the TCPA and its Rules and Regulations, 47 U.S.C. § 227(a)(1).

39.     Defendant initiated each of the calls at issue to Plaintiffs' aforementioned cellular telephone number without the "prior express consent" or "prior express invitation or permission" of Plaintiffs as specified by the TCPA and its Rules and Regulations, 47 U.S.C. § 227(b)(1)(A).

40.     Additionally, none of the telephone calls at issue were placed by Defendant to Plaintiffs' aforementioned cellular telephone number for "emergency purposes" as specified by the TCPA and its Rules and Regulations, 47 U.S.C. §227 (b)(1)(A).

41.     Moreover, the telephone collection calls at issue were at all material times specifically prohibited pursuant to 11 U.S.C. § 524 and the Subject Discharge Order, and Defendant was and is unequivocally enjoined from placing said collection calls to Plaintiffs pursuant thereto.

42.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

43.     Defendant has a corporate policy of using an automatic telephone dialing system or a pre-recorded or artificial voice message, just as it did when calling the Plaintiff's aforementioned cellular telephone number, as described herein.

44.     Defendant has a corporate policy of purchasing debt that had previously been discharged in bankruptcy and attempting to collect said discharged debts, just as it did when calling Plaintiff's aforementioned cellular telephone number, mailing the above described collection letters to Plaintiffs, and reporting the subject debt to the Credit Reporting Agencies despite actual knowledge of the falsity of said reports, as described herein.

45.     Despite actual knowledge of its wrongdoing, Defendant continued the campaign of abuse.

46.     Defendant's corporate policy is structured to continue to call individuals like the Plaintiffs, despite these individuals explaining to the Defendant that the debts at issue had been previously discharged through bankruptcy, and that the properties securing said debts had been surrendered in connection with such bankruptcy proceedings.

47.     Defendant's corporate policy provided no means for the Plaintiffs to have their number removed from the call list.

48.     Defendant has a corporate policy to harass and abuse individuals despite actual knowledge that the called parties do not owe the alleged debt.

49.     Defendant followed its corporate policies when attempting to communicate with the Plaintiffs in connection with the discharged debt at issue.

50.     Defendant has been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by Plaintiffs.

51.     Defendant has, or should be in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of calls made to Plaintiffs over the relevant time period.

52.     As a direct and proximate result of Defendant's acts or omissions, as set forth herein, Plaintiffs suffered compensatory, statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life.

53.     Plaintiffs' statutory and actual damages in the form of emotional distress, anxiety, fear, worry, embarrassment and mental suffering, pain, anguish, and loss of capacity for the enjoyment of life pursuant to section 559.77, Florida Statutes, have continued and are continuing as of the filing of this complaint.

54.     All conditions precedent to the filing of this action have occurred, or have otherwise been waived.

## COUNT I
### (Violation of the TCPA against BAYVIEW)

55.     Plaintiffs re-allege paragraphs (1) through (54) as if fully restated herein and further state as follows:

56.     None of the calls at issue were placed by Defendant to Plaintiffs' cellular telephone number with the "prior express consent" of Plaintiffs, as specified by the TCPA, 47 U.S.C. § 227(b)(1)(A).

57.     Furthermore, none of the calls at issue were placed by Defendant to Plaintiffs for "emergency purposes" as specified by the TCPA, 47 U.S.C. §227 (b)(1)(A).

58.     Moreover, the calls at issue were at all material times specifically prohibited pursuant to 11 U.S.C. § 524 and the Subject Discharge Order, as Defendant is unequivocally enjoined from placing said collection calls to Plaintiffs pursuant thereto.

59.     Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs by repeatedly placing non-emergency calls to Plaintiffs' cellular telephone number using an automated telephone dialing system and/or prerecorded or artificial voice message without Plaintiff's prior express consent, invitation or permission, as specifically prohibited by the TCPA, 47 U.S.C. §227(b)(1)(A)(iii).

60.     The TCPA provides Plaintiffs with a private right of action against Defendant for its violations of the TCPA, as described herein, pursuant to 47 U.S.C.A. § 227(b)(3), and permits both injunctive relief in addition to statutory damages.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, costs, interest and such other relief as this Court deems just and proper.

## COUNT II
### (Violation of the Florida Consumer Collection Practices Act "FCCPA" against BAYVIEW)

61.     Plaintiffs re-allege paragraphs (1) through (54) as if fully restated herein and further state as follows:

62.     At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including section 559.72, Florida Statutes.

63.     Defendant engaged in an act or omission prohibited under section 559.72(7),

Florida Statutes, by willfully communicating with the Plaintiffs or any member of his/her family with such frequency as can reasonably be expected to harass the Plaintiffs.

64.    Defendant engaged in an act or omission prohibited under section 559.72(7), Florida Statutes, by willfully engaging in other conduct which can reasonably be expected to abuse the Plaintiffs.

65.    Defendant engaged in an act or omission prohibited under section 559.72(9), Florida Statutes, by attempting to enforce a debt when such person knows that the debt is not legitimate, or asserting the existence of some other legal right when such person knows that the right does not exist.

66.    Defendant engaged in an act or omission prohibited under section 559.72(18), Florida Statutes, by attempting to collect a debt from Plaintiffs while having knowledge that Plaintiff was represented by counsel.

67.    Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by section 559.77, Florida Statutes, including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life; and attorney fees, interest and costs.

WHEREFORE, Plaintiffs respectfully demand judgment against Defendant for statutory damages, actual damages, punitive damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

## COUNT III
### (Violation of the "FDCPA" Against BAYVIEW)

68.    Plaintiffs re-allege and incorporate by reference the allegations of Paragraphs (1)

through (54), as if fully set forth herein.

69.    Plaintiffs have been the object of collection activity by Defendant arising from an alleged consumer debt.

70.    Defendant is a "debt collector" as defined by the FDCPA.

71.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692c(a)(2) by communicating with the Plaintiffs while having knowledge that the Plaintiffs were represented by an attorney with respect to such a debt.

72.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692d engaging in conduct in connection with the collection of a debt, the natural consequence of which is to harass, oppress, or abuse Plaintiffs.

73.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692d(5) by causing Plaintiffs' telephone to ring or engaging Plaintiffs in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass Plaintiffs at the called number.

74.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692d(6) by calling Plaintiff's cellular telephone number and hanging up prior to or as soon as the Plaintiff or the Plaintiffs' voice mail answered the call, in such a way as to fail to provide a meaningful disclosure of its identity.

75.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692e(2)(A) by falsely representing the character, amount or legal status of the alleged debt at issue.

76.    Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692e(10) by the use of any false representation or deceptive means to collect or attempt to collect a debt from Plaintiffs or to obtain information concerning Plaintiffs.

77.     Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692e(11) by calling Plaintiff's cellular telephone number and hanging up prior to or as soon as the Plaintiffs or the Plaintiff's voice mail answered the call, in such a way as to fail to disclose that the communication was from a debt collector.

78.     Defendant engaged in an act or omission prohibited under 15 U.S.C. §1692f by using unfair or unconscionable means to collect or attempt to collect a debt from Plaintiffs.

79.     Defendant's acts and omissions as described herein have directly and proximately resulted in Plaintiff's prior and continuing sustaining of damages as described by 15 U.S.C. 1692 including, but not limited to: statutory damages, actual damages in the form of emotional pain and suffering, fear, worry, embarrassment, humiliation and loss of the capacity for the enjoyment of life, lost financing opportunities and financing terms making life more expensive for Plaintiffs; and attorney fees, interest and costs.

WHEREFORE, Plaintiffs respectfully demands judgment against Defendant for statutory damages, actual damages, an injunction from similar conduct in the future, attorney fees, costs, interest and such other relief as this Court deems just and proper.

## COUNT V
### (Intentional Infliction of Emotional Distress against BAYVIEW)

80.     Plaintiffs re-allege paragraphs (1) through (54) above as if fully set forth herein, and further states:

81.     The outrageous conduct of Defendant individually, and through its employees, agents, representatives and collectors, as described herein, deliberately, recklessly and/or intentionally inflicted emotional distress on the Plaintiffs.

82.     The outrageous conduct of Defendant, as described herein, was directed at Plaintiffs by and through Defendant's employees, agents, apparent agents or other persons acting

to benefit and further the interests of Defendant, and acting in the course and scope of their employment or agency with Defendant.

83.    As a direct and proximate result of the outrageous conduct of Defendant, as described herein, Plaintiffs sustained mental pain and suffering, emotional distress, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiffs respectfully demands a trial by jury of all issues so triable and judgment against Defendant for compensatory damages, punitive damages, costs, interest and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all issues so triable.

## CERTFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on this 17th day of March, through CM/ECF to:  Gary M. Freedman, Esquire - Tabas, Freedman & Soloff, P.A.  gfreedman@tabasfreedman.com (Counsel for Defendant)

Respectfully submitted,


_s/ Tav Gomez_
Octavio "Tav" Gomez, Esquire
Florida Bar No. 0067249
Morgan & Morgan, Tampa,  P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 222-4797
TGomez@ForThePeople.com
JFeal@ForThePeople.com
KGlascock@ForThePeople.com
Counsel for Plaintiffs